**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **N.W.,** *et al.,* | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 13-1801 (RDM)** |
| | ) |
| **DISTRICT OF COLUMBIA,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM OPINION**

Plaintiffs James Werner, Christine Bird, and their son N.W. contend that the District of

Columbia ("the District") deprived N.W. of his right to a free appropriate public education

("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et*

*seq.* Compl. ¶ 1.  Plaintiffs initially filed a complaint with the District of Columbia Public

Schools ("DCPS") Student Hearing Office, alleging three related claims.  At the statutorily-

mandated due process hearing, the DCPS hearing officer concluded that Plaintiffs' first claim

was barred by a prior settlement agreement, and, based on that decision, Plaintiffs indicated that

they could not proceed on the remaining claims.  The hearing officer, accordingly, dismissed the

complaint in its entirety.  Plaintiffs then brought this action, challenging the hearing officer's

decision.

The matter is now before the Court on the District's Motion to Dismiss (Dkt. 3) and

Plaintiffs' Cross-Motion for Summary Judgment (Dkt. 6).  The parties agree that Plaintiffs'

challenge turns on a single issue—the interpretation and effect of the settlement agreement—and

that this issue is appropriate for resolution on the pending motions.  *See* Dkt. 5 at 17; Dkt. 7 at 5.

For the reasons set forth below, the Court concludes that the settlement agreement does not bar Plaintiffs' claims.  Accordingly, the Court will **GRANT** Plaintiffs' Cross-Motion for Summary Judgment and **DENY** the District's Motion to Dismiss.  The Court will also **DENY** Plaintiffs' Motion for Leave to File Additional Evidence (Dkt. 10) and **GRANT** Plaintiffs' Motion for Leave to File Additional Evidence (Dkt. 14).  The matter will be **REMANDED** to the DCPS Student Hearing Office for further proceedings consistent with this Opinion.

## I. BACKGROUND

### A.   Statutory Background

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  In exchange for federal educational assistance, "school systems must ensure that 'all children with disabilities residing in the State . . . regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated.'"  *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 518-19 (D.C. Cir. 2005) (quoting 20 U.S.C. § 1412(a)(3)(A)).  "Once such children are identified, a 'team' including the child's parents and select teachers, as well as a representative of the local educational agency with knowledge about the school's resources and curriculum, develops an 'individualized education program,' or 'IEP,' for the child."  *Id.* (citing 20 U.S.C. §§ 1412(a)(4), 1414(d)).  "'If no suitable public school is available, the [school system] must pay the costs of sending the child to an appropriate private school.'"  *Id.* (quoting *Jenkins v. Squillacote*, 935 F.2d 303, 305 (D.C. Cir. 1991)) (alterations in original).

The IDEA provides that parents dissatisfied with a proposed IEP or other aspects of their child's "identification, evaluation, or educational placement" are entitled to an impartial "due process hearing" conducted by a qualified hearing officer.  20 U.S.C. §§ 1415(b)(6), (f)(1)(A); *see* 5-E D.C. CODE MUN. REGS. § 3030.11 (LexisNexis 2015).  At the due process hearing, parents may present evidence and call and cross-examine witnesses.  20 U.S.C. § 1415(h); *see* 5-E D.C. CODE MUN. REGS. § 3031.1 (LexisNexis 2015).  The burden of persuasion at the hearing rests with the party seeking relief.  5-E D.C. CODE MUN. REGS. § 3030.14 (LexisNexis 2015); *see Schaffer v. Weast*, 546 U.S. 49, 51 (2005).

Any party aggrieved by the hearing officer's findings and decision may bring a civil action in state or federal court.  20 U.S.C. § 1415(i)(2); 5-E D.C. CODE MUN. REGS. § 3031.5 (LexisNexis 2015).  The reviewing court "(i) shall receive the record of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C); *see Reid*, 401 F.3d at 520-21.  Although judicial review in an IDEA proceeding is typically based on the administrative record, the trial court may consider "additional evidence."  20 U.S.C. § 1415(i)(2)(C)(ii); *see Branham v. District of Columbia*, 427 F.3d 7, 13 (D.C. Cir. 2005), *Kingsmore v. District of Columbia*, 466 F.3d 118, 120 (D.C. Cir. 2006); *see also S.S. v. District of Columbia*, 2014 WL 4650885, *4 (D.D.C. Sept. 19, 2014) ("The trial court has the discretion to determine what constitutes 'additional' evidence under the IDEA.")  The trial court may decide whether to "itself hear additional evidence to supplement the missing parts of the record," *Kingsmore*, 466 F.3d at 120, or to instead "return the case to the hearing officer," *Branham*, 427 F.3d at 17-18; *see Reid*, 401 F.3d at 526.

3

**B.  Factual Background**

The relevant facts are largely undisputed, *see* Dkt. 3 at 3, and, in any event, because the hearing officer ruled against Plaintiffs as a matter of law, Plaintiffs' allegations in the administrative proceeding can, absent contrary evidence, be taken as true for purposes of this proceeding.  Plaintiff N.W., who is seventeen, has been diagnosed with several learning disorders and an anxiety disorder.  A.R. 9.  Plaintiffs contend that the symptoms of N.W.'s anxiety disorder "are triggered in part by exposure to unusual odors and sudden or loud noises." Compl. ¶ 8.  N.W. initially attended a DCPS preschool, but relocated to Missouri with his family in 2002.  A.R. 9.  Between 2002 and 2012, N.W. attended public and private schools in Missouri and other states.  A.R. 9, 10.  N.W. received special education services during this period.  *Id.*  In 2011, N.W.'s evaluations indicated that he had difficulties with social interactions and that his instructional level in math and reading lagged behind his grade level.  A.R. 10.

In 2012, N.W. and his family returned to the District.  A.R. 10.  Upon their return, N.W. enrolled at the Lab School of Washington, a private special education school.  A.R. 10.  In August of 2012, N.W.'s parents sent an enrollment package to DCPS.  A.R. 11.  DCPS held a screening meeting for N.W., but did not propose an IEP at that time.  A.R. 11.

In January of 2013, N.W.'s parents filed an administrative due process complaint alleging that DCPS had failed to timely evaluate N.W.'s eligibility and to provide an IEP.  A.R. 11; *see* Dkt. 14, Ex. B.  They sought funding for N.W.'s placement at the Lab School and reimbursement for "tuition and related services for the 2012-13 school year."  Dkt. 14, Ex. B, at 6.

In February 2013, DCPS proposed to settle the dispute.  A.R. 11; *see* A.R. 42-46 (settlement agreement).  In exchange for the withdrawal of the pending due process complaint, DCPS agreed to "reimburse the parents' tuition and fees at the Lab School of Washington for [N.W.] from December 19, 2012 until June 20, 2013," A.R. 43 ¶ 5, *i.e.*, until the last day of the

2012-2013 school year, *see* Dkt. 5, Ex. C, at 12; Dkt. 15-2 at 12.  DCPS also agreed to pay a

maximum of $3,000 in reasonable attorney's fees.  *Id.* ¶ 6.  The settlement agreement, which was

drafted by DCPS, contains a "Release and Waiver" provision ("the Release").  The Release

states:

> In exchange for the consideration provided herein the Petitioner agrees to
> waive all rights, claims, causes of action, known and unknown, of any kind
> against DCPS, including those claims under IDEA and § 504 the Petitioner
> now asserts or could assert in the future for a Free and Appropriate Public
> Education (FAPE) for Petitioner up to the date of this Agreement, and up to
> June 20, 2013.

A.R. 44 ¶ 10.[1]  N.W.'s parents accepted the offer on February 28, 2013, and the agreement

became effective on March 5, 2013.  A.R. 46.

On April 18, 2013, DCPS met with N.W.'s parents and teachers to draft an IEP for the

2013-2014 school year.  *See* A.R. 47.  The draft IEP called for N.W. to receive a specified

number of hours of special education, occupational therapy and speech/language services each

month.  *See* A.R. 47-67.  DCPS offered to implement the IEP at Coolidge High School

("Coolidge").

N.W.'s parents allege that they were concerned about the proposed placement at Coolidge

because they did not think Coolidge could deliver the services in the IEP.  Compl. ¶ 47; A.R. 12,

13.  On June 9, 2013, N.W.'s father visited Coolidge to observe the facilities and special

education classrooms.  A.R. 12.  He concluded that the environment at Coolidge was not, in his

view, appropriate for N.W. because of significant distractions, including noise, poor lighting, and

strong odors.  *Id.*; A.R. 102.  On June 16, 2013, DCPS sent N.W.'s parents a letter confirming

that Coolidge "is the school chosen by DCPS where your child will attend and where his/her IEP

will be implemented" for the 2013-2014 school year.  A.R. 68.

---

[1]  Plaintiffs do not assert claims under § 504 of the Rehabilitation Act.

The 2012-2013 school year ended on June 20, 2013.  Dkt. 5, Ex. C, at 12; Dkt. 15-2 at 12.

On July 23, 2013, N.W.'s parents filed a second administrative due process complaint, *see* A.R.

6-15, and requested an administrative hearing on the following issues: (1) whether DCPS

"den[ied N.W.] a FAPE by failing to propose an appropriate IEP," A.R. 13; (2) whether DCPS

denied N.W. a FAPE by proposing to place N.W. at Coolidge, "a school that could not

implement the April, 2013 IEP," *id.*; and (3) whether "the Lab School of Washington [was] a

proper placement" for N.W, *id.*

DCPS responded that it "had no obligation to offer [N.W.] an IEP" because N.W. was not

enrolled in public school. A.R. 27-28.  DCPS also argued, in the alternative, that Plaintiff's

IDEA "claim is barred by settlement.  The parents signed a settlement agreement with DCPS

which provided a release and waiver of any existing claims related to the provision of FAPE and

in the future." A.R. 27.  At that time, DCPS did not offer any legal analysis or argument to

support its waiver defense. A.R. 27.  At the prehearing conference, "the hearing officer

discussed with the parties the possible bar of the [settlement agreement]." A.R. 109.  DCPS

indicated that it might file a prehearing motion on the issue, but did not do so.

The administrative hearing took place on September 19, 2013.  *See* A.R. 108-10

("Administrative Order"); Dkt. 15-2 ("Hearing Tr.").  No witnesses testified, no evidence was

presented, and the hearing officer did not find any facts.  Hearing Tr. 34-35.  Instead, "as a

preliminary matter," Administrative Order at 2, the hearing officer invited oral argument on

whether the settlement agreement bars Plaintiffs' claims, insofar as those claims "relate to

activities that took place on April 18 of 2013," Hearing Tr. 8-9.  After reviewing the text of the

settlement agreement and hearing argument from both sides, Administrative Order at 2, the

hearing officer concluded that "the clear and unambiguous terms of the [Release]" barred

Plaintiffs from asserting claims based on "activities that took place" prior to June 20, 2013,

Hearing Tr. 20-21.  In the hearing officer's view, Plaintiffs could "absolutely" have challenged

the adequacy of a hypothetical IEP proposed on June 21, 2013, but the Release barred them from

challenging the adequacy of the April 18, 2013, IEP.  Hearing Tr. 20-24.

After concluding that Plaintiffs' first claim was barred, the hearing officer expressed her

tentative view that "on its face . . . the settlement agreement also bars claim number two," i.e.,

Plaintiffs' claim that Coolidge, the placement confirmed by DCPS on June 16, 2013, could not

implement the IEP as written.  Hearing Tr. 28-29; Administrative Order at 2.  Plaintiffs conceded

that in light of the hearing officer's construction of the Release, they could not proceed with any

of their claims.  Hearing Tr. 21-23.  The hearing officer dismissed Plaintiffs' challenge to the

sufficiency of the April 2013 IEP with prejudice, and dismissed the remaining two claims

without prejudice.  Administrative Order at 2.

Plaintiffs timely brought the present action seeking reversal of the hearing officer's

decision.  The Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(2).

## II.  STANDARD OF REVIEW

Actions for judicial review of administrative decisions under the IDEA are subject to

unique procedures and standards.  Typically, a motion for summary judgment should be granted

if the pleadings, the discovery and disclosure materials on file, and any affidavits show that

"'there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (quoting Fed. R.

Civ. P. 56(c)(2)).  When ruling on a motion for summary judgment, the Court must view the

evidence in the light most favorable to the nonmoving party.  *Holcomb v. Powell*, 433 F.3d 889,

895 (D.C. Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)).

In "a civil action reviewing an IDEA administrative determination," however, "'[a] motion for

summary judgment operates as a motion for judgment based on the evidence comprising the

record and any additional evidence the Court may receive.'" *S.S. v. District of Columbia*, 2014

WL 4650885, *4 (quoting *D.R. v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009)).

The district court is required to "receive the records of the administrative proceedings," to "hear

additional evidence at the request of a party," and to base "its decision on the preponderance of

the evidence." 20 U.S.C. § 1415(i)(2)(C). The burden of proof is on the party challenging the

hearing officer's decision, who must "at least take on the burden of persuading the court that the

hearing officer was wrong." *Reid*, 401 F.3d at 521 (quoting *Kerkam v. McKenzie*, 862 F.2d 884,

887 (D.C. Cir. 1989)).

      The direction that the district court base its decision on the "preponderance of the

evidence is by no means an invitation to the courts to substitute their own notions of sound

educational policy for those of the school authorities which they review." *Board of Education v.*

*Rowley*, 458 U.S. 176, 206 (1982) (quotation marks omitted). At the same time, however, the

"IDEA plainly suggest[s] less deference than is conventional in administrative proceedings,"

*Reid*, 401 F.3d at 521 (citation and quotation marks omitted; alteration in original). An

administrative decision, moreover, that is made "without reasoned and specific findings deserves

little deference." *Id.* (citation and quotation marks omitted). And, where, as here, the hearing

officer's decision is based solely on conclusions of law, "that decision is entitled to no

deference." *District of Columbia v. Vinyard*, 971 F. Supp. 2d 103, 107 (D.D.C. 2013) (citing

*L.R.L. v. District of Columbia*, 896 F. Supp. 2d 69, 74 (D.D.C. 2012)).

### III.  DISCUSSION

      The parties agree that this action turns on a single issue: the scope and effect of the

Release contained in the March 2013 Settlement Agreement. Plaintiffs contend that they only

waived IDEA claims relating to N.W.'s education during the 2012-2013 school year, and not

subsequent school years. The District, for its part, contends that the Release waives any IDEA

claims Plaintiffs might have asserted prior to June 20, 2013, regardless of the school year to which those claims relate.

The parties agree that the interpretation of the Release is governed by District of Columbia contract law. *See Hester v. District of Columbia*, 505 F.3d 1283, 1286 (D.C. Cir. 2007); *Makins v. District of Columbia*, 277 F.3d 544, 547 (D.C. Cir. 2002). Under District of Columbia law, the interpretation of an unambiguous contract is a question of law, as is the determination whether the contract is ambiguous. *See Abdelrhman v. Ackerman*, 76 A.3d 883, 887-89 (D.C. 2013). A contract, moreover, "is not rendered ambiguous merely because the parties disagree over its proper interpretation." *Parker v. U.S. Trust Co*., 30 A.3d 147, 150 (D.C. 2011). To the contrary, "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress or mutual mistake." *Dyer v. Bilaal*, 983 A.2d 349, 354-55 (D.C. 2009) (alteration in original). Under this "objective" standard, "extrinsic evidence of the parties' subjective intent may be resorted to only if the document is ambiguous." *Christacos v. Blackie's House of Beef, Inc.*, 583 A.2d 191, 194 (D.C. 1990).

In limited circumstances, however, extrinsic evidence may be considered "in determining whether *objectively* the meaning of the contract language is not susceptible of a clear and definite undertaking." *Abdelrhman*, 76 A.3d at 889 (emphasis added and quotation marks omitted). The District of Columbia Court of Appeals has not definitely resolved the precise scope of this exception. *Id.* at 888 ("Admittedly, our cases have not been a model of clarity in explaining the parol evidence rule."). "[A] subset of [Court of Appeals] cases," for example, "have allowed more liberal use of extrinsic evidence," including "statements made in the course of negotiation of the contract to determine what a reasonable person in the parties' circumstances would have

believed the [contract] meant." *Id.* (citation omitted).  Without entering this debate, however, it is safe to conclude that "'meaning can almost never be plain except in a context,'" *id.* (quoting Restatement (Second) of Contracts § 212 comment b), and, at least at times, "extrinsic evidence may be considered to determine the circumstances surrounding the making of the contract so that it may be ascertained what a reasonable person in the position of the parties would have thought the words meant," *id.* (quoting *Christacos*, 30 A.3d at 194).

As explained below, the Court concludes that the Release unambiguously bars only IDEA claims relating to the 2012-2013 school year and prior school years.  Furthermore, even if the Release were ambiguous, the Court would still conclude that it does not bar Plaintiffs from asserting claims relating to the 2013-2014 school year.

## A.  The Plain Meaning of the Release

The Release contained in the March 2013 settlement agreement states:

> In exchange for the consideration provided herein the Petitioner agrees to waive all rights, claims, causes of action, known and unknown, of any kind against DCPS, including those claims under IDEA and § 504 the Petitioner now asserts or could assert in the future for a Free and Appropriate Public Education (FAPE) for Petitioner up to the date of this agreement, and up to June 20, 2013.

A.R. 44 ¶ 10.  Both parties maintain that the Release is unambiguous.  Plaintiffs contend that the Release "is unambiguous in its application to the 2012-2013 school year and that school year only" and "does not waive defendant's liability for failing to provide a FAPE to N.W. for the 2013-2014 school year."  Dkt. 5 at 17.  The District, on the other hand, argues that the hearing officer correctly concluded that the Release "unambiguously waived and released DCPS from any claim for FAPE arising prior to June 20, 2013," Dkt. 3 at 8, including any "claim concerning FAPE relating to an IEP developed in April 2013," Dkt. 7 at 7; *see* Administrative Order at 2 ("Petitioners' first claim regarding the April 2013 IEP is barred by the clear and unambiguous terms of the [settlement agreement].").

The Court agrees with Plaintiffs that the Release unambiguously waives IDEA claims relating to the denial of a FAPE for school years prior to 2013-2014 only; it does not waive claims relating to a FAPE for the 2013-2014 school year, even if those claims are based on events that took place before June 2013.  Applying the "objective" test, the Court must determine "what a reasonable person in the position of the parties would have thought the disputed language meant."  *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984).  In making this determination, the Court must consider the settlement agreement "as a whole, giving a reasonable, lawful, and effective meaning to all its terms."  *Id.*

Viewed as a whole, the settlement agreement represents a straightforward resolution to the parties' dispute over the District's obligations to N.W. for the 2012-2013 school year.  DCPS agreed to reimburse Plaintiffs for N.W.'s tuition and fees at the Lab School of Washington "from December 19, 2012 until June 20, 2013."  A.R. 43 ¶ 5.  It is undisputed that June 20, 2013, was the last day of the 2012-2013 school year.  *See* Dkt. 5, Ex. C, at 12; Hearing Tr. 12.  In return, Plaintiffs agreed to withdraw their pending due process complaint for the 2012-2013 school year.  *See* A.R. 42 ¶ 3; Dkt. 14, Ex. B.  In addition, the Release specifies that "[i]n exchange for the "consideration provided herein," (i.e., tuition reimbursement "until June 20, 2013"), Plaintiffs waived claims they "now assert[] or could assert in the future for a [FAPE] for [N.W.] up to the date of this agreement, and up to June 20, 2013."  A.R. 42 ¶ 10.  In other words, DCPS agreed partially to reimburse Plaintiffs for the cost of N.W.'s education through the end of the school year ending on June 20, 2013, and Plaintiffs agreed to waive all claims for a free appropriate public education through that same school year.  When viewed in the context of the entire settlement, that is the unambiguous meaning of the Release.

The hearing officer instead interpreted the language "up to the date of this agreement, and up to June 20, 2013" as distinguishing two categories of claims:  (1) claims arising prior to June

20, 2013, which "could have been asserted" prior to that date; and (2) claims arising on or after

June 21, 2013, which could not have been asserted prior to that date.  *See* Hearing Tr. 31-32.

Thus, as construed by the hearing officer, the Release waived all claims that "could have been

asserted" before June 20, 2013.  *Id.*; *see id.* at 26 ("[T]he parties signed an a[gree]ment to not

assert any claims based on activities that took place through June, and then in April some

activities took place and they are just clearly barred."); *id.* at 30.  But the text of the Release does

not draw such a distinction.  It does not purport to distinguish claims by the date they "could

have been asserted."  Rather, the Release provides that Plaintiffs agreed to waive all existing and

future claims for free and appropriate public education over the course of the 2012-2013 school

year.  *See* A.R. 44 ¶ 10.  Phrased somewhat differently, although the hearing officer construed

the Release as distinguishing between claims that "could be asserted" before or after June 20,

2013, the language is better read to distinguish between N.W.'s right to free and appropriate

public education before and after June 20, 2013.  So construed, Plaintiffs did not waive the right

to assert claims for a free appropriate public education during the 2013-2014 school year or any

subsequent year, even if they could have asserted those claims before the end of the 2012-2013

school year.

　　　Although the Court recognizes that the settlement agreement might have been drafted

with greater clarity, the hearing officer's reading of the Release is strained.  The Release waives

claims "the Petitioner now asserts or could assert in the future for a Free and Appropriate Public

Education (FAPE) for Petitioner up to the date of this Agreement, and up to June 20, 2013."

Under the hearing officer's construction, the temporal limitation—"up to the date of this

Agreement, and up to June 20, 2013"—modifies "now asserts or could assert in the future."  But,

if the temporal limitation speaks to *when a claim may be asserted*, as the hearing officer's

construction posits, it results in the unnatural construction that Petitioner waives those claims

that he "now asserts . . . up to the date of this Agreement."  In contrast, if the temporal limitation

addresses the *substance of claims that are waived*—that is, claims for free and appropriate public

education during any school year prior to 2013-2014—the provision makes perfect sense.  The

Plaintiffs waived the claims they "now assert []" for free and appropriate public education "up to

the date of this Agreement," and the claims they "could assert in the future" for free and

appropriate public education "up to June 20, 2013."

      The hearing officer's interpretation is also inconsistent with the agreement "as a whole."

*See 1010 Potomac Assocs.*, 485 A.2d at 205 (explaining that contracts are construed "as a

whole").  The agreement's other provisions address the 2012-2013 school year only.  To the

extent the agreement is forward-looking, it disclaims any effect on N.W.'s future education:  the

agreement specifies that it "does not act as a placement, and the parents further understand that

the student will not have any maintenance of placement, 'stay put' rights as a result of this

agreement."  A.R. 43 ¶ 5.  The Release (as interpreted by the hearing officer) is the only

provision that would relate to the 2013-2014 school year.[2]  The hearing officer obliquely

acknowledged this incongruity, but cast it aside as merely the product of "very good lawyering"

by the District.  *See* Hearing Tr. 30-31.

      To make matters worse, as Plaintiffs observe, the hearing officer's interpretation invites

bizarre results.  Here, the District argues that N.W. lost his right to seek relief with respect to the

2013-2014 school year because N.W.'s parents met with DCPS officials in April 2013 to address

N.W.'s IEP for the 2013-2014 school year.  *See* Dkt. 3 at 9; Dkt. 7 at 7.  The District does not

---

[2]  For simplicity, the Court treats the April 2013 IEP as relating to the 2013-2014 school year only.  Although the IEP was drafted during the previous school year, the parties agree that it was not to take effect until 2013-2014.  Furthermore, under either party's interpretation of the Release, Plaintiffs have waived any potential claims based on the April IEP that relate to the 2012-2013 school year.

dispute, however, that Plaintiffs' claims would not be barred if the IEP had been proposed after

June 20, 2013.  Similarly, the hearing officer noted that Plaintiffs "absolutely" could have

challenged the IEP had it been proposed on June 21, 2013.  Hearing Tr. 20-24.  Under this

construction of the Release, Plaintiffs' rights thus turned on the fortuity—or lack of fortuity—of

when DCPS prepared the IEP and met with N.W.'s parents.  Neither the hearing officer nor

DCPS provide any analysis to explain why the Release's language compels, or why Plaintiffs

would have agreed to, such an arbitrary result.  Absent some explanation, the Court cannot agree

that the hearing officer's interpretation of the Release makes sense in context.

Based on these considerations, the Court concludes that the Release is unambiguous and

that it applies only to claims for a FAPE for the 2012-2013 and prior school years.

## B.  Consideration of Extrinsic Evidence and Other Factors

Neither party contends that the Release is ambiguous, and as discussed above, the Court

concludes that it is not ambiguous.  However, even if the Release were ambiguous, the record

would support the same conclusion:  the Release only waives claims for a FAPE with respect to

the 2012-2013 and earlier school years.

### 1.  The extrinsic evidence

Where a contract is ambiguous, "the choice among reasonable interpretations . . . is for

the factfinder to make, based on the evidence presented by the parties to support their respective

interpretations."  *Parker*, 30 A.3d at 151 (citation and quotation marks omitted).  That evidence

may include evidence of the parties' subjective intent.  *See 1010 Potomac Assocs.,* 485 A.2d at

205.  Under the IDEA, moreover, a reviewing court "shall hear additional evidence at the request

of a party."  20 U.S.C. § 1415(i)(2)(C)(ii).  Where there are gaps in the administrative record,

"[the district court may] itself hear additional evidence to supplement the missing parts of the

record."  *Kingsmore*, 466 F.3d at 120.  At a conference held on March 4, 2015, Plaintiffs

indicated that they wished to submit extrinsic evidence in support of their interpretation of the Release. The Court, accordingly, ordered that "upon Plaintiffs' request, the parties shall have an opportunity to submit 'additional evidence' pursuant to [IDEA], limited to the issue of the interpretation of the release in the settlement agreement." March 4, 2015, Minute Order. Although unnecessary to support the Court's conclusion, the additional evidence submitted in this proceeding, if anything, confirms that the Release is limited to claims for school years prior to 2013-2014.

Plaintiffs submitted evidence including a sworn declaration from N.W.'s father, their January 2013 administrative hearing request, and records from meetings attended by DCPS and N.W.'s parents in January and February of 2013. *See* Dkt. 14, Exs. A-D. [3] The District did not submit any evidence or otherwise respond to the evidence submitted by Plaintiffs. *See* Dkt. 16. Although the District maintains that "the four corners of the contract clearly and unambiguously reflect the parties' intent," it has not objected to the Court's consideration of Plaintiffs' additional evidence. *See* Dkt. 16. Neither party has requested remand to the hearing officer or a further opportunity to supplement the record.

The Court concludes that to the limited extent the administrative record and additional submissions shed light on the parties' subjective intent, that evidence may be considered, and it supports the Plaintiffs. In particular, N.W.'s father submitted a declaration stating that he intended the Release to waive claims relating to the 2012-2013 school year only and did not

---

[3] Plaintiffs also moved for leave to submit the transcript of an administrative hearing held on June 26, 2014. Dkt. 10. The District opposed, arguing that this evidence is not relevant to the issues presently before the Court. Dkt. 11. The Court agrees with the District that the June 2014 transcript is not relevant to the claims addressed in the hearing officer's decision or the circumstances surrounding the March 2013 settlement agreement, and therefore denies Plaintiffs' motion. *See S.S. v. District of Columbia*, 2014 WL 4650885 at *5 ("[A]dditional evidence should be relevant to the challenged decisions of the hearing officer.").

understand it to waive claims for the 2013-2014 school year or any subsequent year.  *See* Dkt. 14, Ex. A at ¶¶ 9, 20-21.  Moreover, when N.W.'s father attended the IEP meeting in April 2013, "everyone at the meeting seemed to acknowledge that the 2012-2013 school year had been settled," but "[n]o one at the meeting . . . ever voiced the opinion that the March 5, 2013 settlement agreement affected [Plaintiffs'] procedural rights with respect to the proposed IEP." *Id.* at ¶ 17.

The District did not rebut or otherwise respond to Plaintiffs' declaration, and has not submitted any extrinsic evidence to support its interpretation of the Release.  *See* Dkt. 16. Tellingly, the District has never even suggested that DCPS personnel subjectively intended the Release to waive claims for the 2013-2014 school year.  Accordingly, consideration of the parties' subjective intent does not change—and, indeed, confirms—the Court's conclusion that the Release does not apply to N.W.'s right to a FAPE for the 2013-2014 school year.

### 2. *Deference*

The District argues that under the principles of *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), the Court should defer to the District's interpretation of the Release.  *See* Dkt. 3 at 7.  The District cites no case, however, holding that a school district's interpretation of an IDEA settlement agreement receives such deference, and this Court is aware of none.  The District relies on *Cajun Electric Power Cooperative v. FERC*, 924 F.2d 1132, 1135-36 (D.C. Cir. 1991), in which the Court of Appeals recognized that the Federal Energy Regulatory Commission may receive deference to its interpretation of a Commission-approved public utilities settlement agreement.  This argument fails for several reasons.  First, insofar as the District is arguing that the Court should defer to the hearing officer's interpretation, the Court of Appeals has recognized that adjudications under the IDEA are entitled to "less deference than . . . conventional . . . administrative proceedings," *Reid*, 401 F.3d at 521; where, as here, the

16

hearing officer has based her decision exclusively on a conclusion of law, no deference is owed, *see Vinyard*, 971 F. Supp. 2d at 107.  Second, *Cajun Electric* suggests at most that deference may be due to an agency's interpretation of a settlement agreement that is filed with and approved by an agency, under circumstances indicating that the agreement is "more closely akin to an order of the" agency than an agreement between private parties.  924 F.2d at 1135.  Here, in contrast, there is no indication that the settlement agreement constitutes anything even approaching an administrative order; to the contrary, it "neither admits nor denies culpability and/or liability," A.R. 42, and reads like a garden-variety private settlement.  Finally, *Chevron* and its progeny explained that a court should defer to an agency interpretation only where the court concludes, after applying the "traditional tools of statutory construction," that the relevant text is ambiguous.  467 U.S. at 842 n.9.  As noted above, the Release is not reasonably susceptible to the interpretation that the hearing officer adopted.

### 3.   *Waiver of Federal Statutory Rights*

Plaintiffs, in contrast, argue that to the extent the Release is ambiguous, it cannot effectively waive claims relating to the 2013-2014 school year.  Dkt. 5 at 22-24; *see W.B. v. Matula*, 67 F.3d 484, 496-97 (3d Cir. 1995).  Plaintiffs do not dispute that the IDEA authorizes the settlement of IDEA claims.  *See* 20 U.S.C. § 1415(e).  They argue, however, that waivers of federally-protected civil rights are generally required to be knowing and voluntary.  *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974) (stating that "[i]n determining the effectiveness of" a waiver of a Title VII claim, "a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing") (dictum); *Russell v. Harman Int'l Indus.*, 773 F.3d 253, 255 (D.C. Cir. 2014) ("We generally require waivers of liability to be 'knowing and voluntary' in the context of Title VII.") (dictum); *Salmeron v. United States*, 724 F.2d 1357, 1361 (9th Cir. 1983) ("A release of claims for violations of civil

and constitutional rights must be voluntary, deliberate, and informed.") (citation omitted).

Plaintiffs argue that the Release unambiguously applies only to the 2012-2013 school year, and

to the extent it admits of any ambiguity, the agreement is too unclear to constitute a knowing and

voluntary waiver of N.W.'s IDEA rights with respect to subsequent years. *See Matula*, 67 F.3d

at 497 (explaining that the first factor in the "knowing and voluntary" inquiry is whether the

"language of the agreement was clear and specific").

At least one court of appeals has applied this heightened standard to the waiver of a

child's rights under the IDEA. *W.B. v. Matula*, 67 F.3d at 497; *see also Somoza v. N.Y. City

Dep't of Educ.*, 475 F. Supp. 2d 373, 387–88 (S.D.N.Y. 2007), *rev'd on other grounds*, 538 F.3d

106 (2d Cir. 2008); *Rowley*, 458 U.S. at 198 (explaining that Congress enacted IDEA to protect

the civil rights of children with special educational needs).  The Court of Appeals for this Circuit,

however, has not addressed whether a waiver of IDEA rights must be knowing and voluntary,

and, indeed, the law in this Circuit is "unclear" on whether the knowing and voluntary

requirement even applies to settlements of Title VII claims.  *Russell*, 773 F.3d at 256 (comparing

*United States v. Trucking Emp'rs, Inc.*, 561 F.2d 313, 318 (D.C. Cir. 1977), and *Brown v. Brody*,

199 F.3d 446, 456 n.10 (D.C. Cir. 1999), with *Makins*, 277 F.3d at 547).

Moreover, the relevant question goes beyond whether Plaintiffs knowingly and voluntary

settled claims for past conduct and instead extends to whether they prospectively waived claims

for alleged violations of the IDEA that had not yet occurred.  With respect to Title VII, the

ADEA, and the ADA, the Supreme Court and Courts of Appeals have recognized that "there can

be no prospective waiver of an employee's rights."  *Gardner-Denver*, 415 U.S. at 51; *see

Trucking Emp'rs*, 561 F.2d at 318; *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 450 (3d Cir. 2015)

("Releases . . . must be knowingly and voluntarily signed and cannot waive future claims.");

*Adams v. Philip Morris, Inc.*, 67 F.3d 580, 585 (6th Cir. 1995); *Kendall v. Watkins*, 998 F.2d

848, 851 (10th Cir. 1993).  The Court of Appeals, however, has not addressed whether this principle extends to claims under the IDEA.

As the parties have not briefed the permissibility of a prospective waiver of IDEA claims under federal law or D.C. contract law, and because the Court has concluded, in any event, that the Release unambiguously does not apply to claims relating to the 2013-2014 school year and subsequent school years, the Court will not reach this issue here.  But, even apart from any outright prohibition on the waiver of claims for future violations of federal statutes designed to protect individual rights, the Court notes that the extraordinary nature of such a release militates against the conclusion that, as a matter of D.C. contract law and given the overall context of the settlement agreement, the parties intended such a result.

## C.  The Conduct of Further Proceedings

As discussed above, the Release does not bar Plaintiffs' claims with respect to a FAPE for N.W. for the 2013-2014 school year.  Because the hearing officer erroneously dismissed Plaintiffs' claims at the threshold and never reached the merits, the Court concludes that remand is appropriate.  A hearing officer is best positioned to gather evidence, make "reasoned and specific findings," assess the adequacy of the April 2013 IEP, and if necessary, undertake the "fact-specific exercise of discretion" required to design appropriate relief.  *Reid*, 401 F.3d at 524; *see, e.g.*, *Wilson v. District of Columbia*, 770 F. Supp. 2d 270, 277 (D.D.C. 2011) (remanding to the hearing officer for further proceedings).

The District makes two arguments against remand, neither of which is persuasive.  First, it argues that the Court should dismiss Plaintiffs' claims as mooted by the settlement agreement.  Dkt. 3 at 5-8 ("Because the Court can issue no order affecting these contractually defined rights, Plaintiffs' claim should be denied as moot.").  Even putting aside the fact that release is typically an affirmative defense and not a jurisdictional bar, *see* Fed. R. Civ. P. 8(c), the argument fails

because it assumes that the Release waives Plaintiffs' claims.  As discussed above, the Court

rejects that interpretation.[4]

Next, the District argues that the Court should dismiss Plaintiffs' second claim, which

addressed implementation of the April 2013 IEP, as "unripe" because N.W. never enrolled at

Coolidge.  Dkt. 3 at 10-12.  The Court agrees that DCPS is not obligated to implement an IEP for

a student who declines the offer of a FAPE and remains in a private school.  *Vinyard*, 971 F.

Supp. 2d at 111.  However, as the District concedes, DCPS was required to *offer* N.W. a "free

*appropriate* public education."  Dkt. 3 at 11 (emphasis added); *see Vinyard*, 971 F. Supp. 2d at

114.  Plaintiffs contend that DCPS' offer of a FAPE was deficient for two reasons:  the services

specified in the IEP were insufficient, and the specified services could not be delivered as

promised at Coolidge.  *See* Hearing Tr. 4 ("[Claim] two[] is an alleged denial of FAPE by

proposing a school that cannot implement that IEP.").  The Court is not persuaded that, where a

school district offers services it manifestly cannot deliver, a child's parents have no recourse

until they enroll their child in the deficient program and permit the child to be deprived of the

promised services.  *Cf. Vinyard*, 971 F. Supp. 2d at 114.[5]  Because no factual record was

developed before the hearing officer, the Court is not in a position to evaluate the merits of this

claim.  The Court, accordingly, declines to dismiss Plaintiffs' second claim without providing

Plaintiffs an opportunity for development at the administrative level, and thus remands all three

---

[4]  Claims based on the denial of a FAPE do not necessarily become moot merely because the school year ends.  *See L.R.L.*, 896 F. Supp. 2d at 76.

[5]  The District's reliance on *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412 (2d Cir. 2009); *see* Dkt. 10, is misplaced.  *T.Y.* held only "that an IEP's failure to identify a specific school location will not constitute a *per se* procedural violation of the IDEA."  *Id.* at 420.  *T.Y.* did not address a situation in which the selected school was allegedly incapable of implementing the services in the IEP, and the Court of Appeals for the Second Circuit "emphasize[d] that we are not holding that school districts have carte blanche to assign a child to a school that cannot satisfy the IEP's requirements."  *Id.*

claims for further proceedings.  The Court expresses no opinion on the merits of Plaintiffs'
claims or substantive arguments.

## IV.  CONCLUSIONS

For the reasons explained above, the Court concludes that the Release in the March 2013
settlement agreement does not bar claims relating to the denial of a FAPE for N.W. for the 2013-
2014 school year.  Accordingly, the hearing officer erred in dismissing Plaintiffs' claims as a
matter of law.  The Court remands the matter for further proceedings consistent with this
Opinion.

An appropriate Order accompanies this Memorandum Opinion.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  June 4, 2015